# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-3459

_____

|  |  |  |
|---|---|---|
| John Pritchett, Roxie Pritchett, | * | |
| Appellants, | * | |
| v. | * | |
| Cottrell, Inc.; Jack Cooper Transport Company, Inc., | * | |
| Appellees. | * | |

_____

No. 06-3477

_____

Appeals from the United States District Court for the Western District of Missouri.

[PUBLISHED]

|  |  |  |
|---|---|---|
| Christian Scott, Cathy Scott, | * | |
| Appellants, | * | |
| v. | * | |
| Cottrell, Inc.; Jack Cooper Transport Company, Inc., | * | |
| Appellees. | * | |

_____

No. 06-3665

_____

|                                          |   |
|------------------------------------------|---|
|                                          | * |
| Gaylan Fix, Carman Fix,                  | * |
|                                          | * |
| Appellants,                              | * |
|                                          | * |
| v.                                       | * |
|                                          | * |
| Cottrell, Inc.; Jack Cooper              | * |
| Transport Co., Inc.,                     | * |
|                                          | * |
| Appellees.                               | * |

_____

Submitted:  May 16, 2007
Filed:  January 23, 2008

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

John and Roxie Pritchett, Christian and Cathy Scott, and Gaylan and Carman Fix brought three separate products-liability actions in state court against Cottrell, Inc. (Cottrell), Jack Cooper Transport Co., Inc. (JCT), and others, for injuries that the men sustained while operating a ratchet system designed by Cottrell.[1] Cottrell removed the

_____

[1]Their wives brought loss-of-consortium claims, which are dependent upon the issues discussed in this appeal but not necessary to our analysis. For this reason and

cases to federal court, and the district court denied motions to remand. In each case, the district court dismissed JCT for fraudulent joinder and lack of subject matter jurisdiction[2] and granted summary judgment to Cottrell, concluding that the Appellants had failed to generate a genuine dispute of fact over whether their injuries were caused by a specific design defect. Pritchett and Scott appeal the denial of their motions to remand, asserting that the removal was improperly perfected. Pritchett, Scott, and Fix all appeal the adverse grants of summary judgment. We affirm in part and reverse and remand in part.

I.

In this summary judgment context, we view the evidence and recite the facts in the light most favorable to the Appellants, the nonmoving parties in these cases. Ruminer v. Gen. Motors Corp., 483 F.3d 561, 562 (8th Cir. 2007).

---

for ease of reference, this opinion refers to all claims and filings as if they were brought by the individuals John Pritchett (Pritchett), Christian Scott (Scott), and Gayland Fix (Fix), or "Appellants," though we remain mindful that their wives are also appellants. These cases have been consolidated for briefing and submission in this court.

[2]Each Appellant's notice of appeal named JCT as an appellee and referenced the district court's dismissal of JCT for fraudulent joinder and lack of subject matter jurisdiction, but we conclude that we need not reach these issues on appeal because the parties did not pursue them in their opening briefs to this court. See Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007) (noting "that points not meaningfully argued in an opening brief are waived"). Moreover, Appellants expressly waived the fraudulent joinder argument in their reply brief. (See Appellants' Consolidated Reply Br. at 1.) Our obligation to consider subject matter jurisdiction, even when not raised by the parties, extends where parties attempt to expand the court's jurisdiction by waiver or consent. See, e.g., In re Minn. Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 834 (8th Cir. 2003). We need not address subject matter jurisdiction where, as here, the parties do not seek to invoke it with regard to JCT. There is no question that diversity exists between the remaining parties.

-3-

Pritchett, Scott, and Fix were each employed by JCT as drivers of specially designed car-hauling rigs, used generally to haul automobiles from the car manufacturer to the dealership. In separate incidents, all three men were injured while operating a ratchet system that was attached to the trailer of their rig and used in securing vehicles to the trailer for transport. The ratchet system in each case was designed by Cottrell and required a great deal of physical force to operate. In general, each Appellant testified that while he was manually operating the ratchet system, either to tie-down or to untie a vehicle on his trailer, he experienced a sudden release of pressure or tension in the chain, which caused him to slip, fall, and incur injuries.

Some understanding of how the ratchet system works is necessary for our discussion. According to the affidavit of Elwood Feldman, Vice Chairman of Cottrell, most of Cottrell's trailers are equipped with a chain and ratchet system that is used to tie down the vehicles being hauled. The ratchet system includes a chain and ratchet assembly for each corner of every vehicle hauled on the rig. The driver secures a vehicle to the trailer by attaching a hook in a slot on the undercarriage of the vehicle. The ratchet chain is attached to the hook and sometimes passed around an idler bar to achieve a proper chain angle. With a grab hook, the driver takes up the slack of excess chain. The driver then inserts a tie-down bar into two parallel holes on the ratchet assembly and tightens the chain by pulling on the tie-down bar. This turns the shaft or spool of the device, and the ratchet's pawl clicks as it engages the teeth of the spool as the chain tightens, preventing the release of the tension generated. The chain wraps around the ratchet shaft no more than two times during normal use and should not overlap on itself. The driver tightens the chain until it compresses the loaded vehicle's suspension to a desired level, and he then repeats the process on each corner of that vehicle.

The process of untying a vehicle is merely the reverse of the tie-down process (unless the rig is equipped with the newer quick-release mechanism). The driver

applies additional pressure by pulling on the tie-down bar so that he can lift the dog or pawl out of the ratchet's teeth and allow the chain to unwind little by little until completely released. On models equipped with the newer quick-release ratchet, the quick-release mechanism eliminates the need to apply excessive physical force to untie the vehicle,[3] but it does not alter the tie-down process.

Scott was injured in Missouri on January 14, 2003, when untying a pickup truck from the trailer of a 1991 Cottrell car-hauling rig, which was not equipped with a quick-release mechanism. He testified that while loosening the ratchet by exerting pressure on the tie-down bar to release the dog, he thought the chain rolled on the ratchet causing a sudden release of pressure that jerked and "popped" his shoulder and wrist. (Scott's App. at 211.) He stated that he had experienced this type of occurrence on prior occasions.

Fix was injured on October 27, 2003, in Kansas while operating a 1995 car-hauling rig that was equipped with a quick-release mechanism, but his injury occurred during the tie-down process of tightening the chain. He asserted that his footing was slippery due to leaking hydraulic fluid and the chain rolled and "popped," causing him to fall and injure his knee. (Cottrell's App. at 244.) Fix stated he had complained about the way the ratchet system "would just bounce you," explaining that "it's like pulling on 100 pounds and all of a sudden somebody gives you about six inches, and then it just really whacks you." (Id. at 233 (also stating that the "the ratchet type setup" was causing injuries).) Fix brought another claim alleging injuries from an unrelated ladder incident that occurred on October 5, 2004, in Kearney, Nebraska.

---

[3]With the quick-release mechanism, the chain is released by inserting the tie-down bar into a special hole beside the ratchet head, below the dog or pawl, and applying pressure on the bar to disengage the dog or pawl out of the ratchet teeth with one move of the tie-down bar. Then the chain unwinds in one movement, and the driver no longer maintains physical contact with the device as it unwinds.

The ladder, which had been mounted on his trailer rig, broke while he was climbing it, causing him to fall and sustain injuries.

Pritchett was injured on April 26, 2004, in Kansas while operating a 1995 Cottrell car-hauling rig equipped with a quick-release ratchet system, but like Fix, he was injured while tying down a vehicle to the top deck of the rig, not while using the quick-release mechanism to untie the vehicle. Pritchett stated that while tightening the ratchet on his rig, "a sudden force" threw back the chain and tie-down bar, causing him to fall from the trailer and injure his arm and shoulder. (Id. at 82.) He stated he had experienced this type of occurrence on more than ten occasions.

Pritchett, Scott, and Fix (and, as noted, their respective wives) brought separate products-liability actions against Cottrell and others in the circuit court of Jackson County, Missouri. On claims of strict liability, negligence, and breach of warranty against Cottrell, they sought compensation for the injuries incurred as a result of alleged defects in the design of Cottrell's car-hauling rigs. Cottrell filed a Notice of Removal of Civil Action in federal court with the consent of every defendant except JCT. The written consents were attached to the Notice of Removal as an exhibit. Cottrell asserted that JCT's consent was not necessary as there was no valid claim against JCT, and it had been fraudulently joined to defeat diversity jurisdiction.

Pritchett, Scott, and Fix moved to remand their cases to state court, asserting a lack of unanimous consent to removal. They challenged Cottrell's assertion that JCT's consent was not necessary because it was fraudulently joined, and Pritchett and Scott asserted that the consent of defendant General Motors Corporation (GM) was not valid because it was not signed by an attorney licensed to practice in Missouri. The district court denied the motions to remand, dismissed JCT for lack of jurisdiction, and ultimately granted GM a voluntary dismissal.

Following discovery, Cottrell moved for summary judgment. To substantiate their design defect claims, Pritchett, Scott, and Fix presented the expert opinion of Linda Weseman regarding the ratchet design. She is an engineer who has studied the car-hauling industry, the rigs, and their designs for the purpose of applying engineering principles to issues involving work-related injuries experienced by drivers while tying down and untying vehicles on the rigs. She has secured vehicles on rigs, inspected rigs, met with drivers, and conducted tests measuring the force levels that are applied by drivers when securing vehicles to the car-hauling rigs. Citing various studies, reports, and her own observations, she stated that the ratchet and chain tie-down and untying system requires significant manual force to operate, that Cottrell knew of the significant danger of drivers being injured while tying and untying cargo, and that the technology for alternative devices requiring less manual force has been available for decades and would have prevented the injuries in these cases. In particular, she referred to a study that determined that "the ratchet used by Delavan, which is substantially similar to the Cottrell ratchet tie down system, was improperly designed, allowing sudden releases and chain overloads." (Cottrell's Add. at A-3; A-11; A-20-21.)

In each case, Ms. Weseman stated her opinion that there are feasible, safer, alternative designs, such as tire restraints or hydraulically powered tie-down systems, that would have required little or no manual exertion and would have protected the drivers from injury in the event of a sudden release of force in either the tie-down or the untying process. She also stated that a "wheel strap tie down system has been used successfully for many years in Europe and by competitors in this country." (Id. at A-5.) She offered her opinion that the ratchet tie-down system design is unreasonably dangerous and defective. Ms. Weseman also provided an opinion in Fix's case that the ladder designed and manufactured by Cottrell failed to meet the safety criteria established by applicable safety codes and standards.

The district court granted summary judgment on the strict liability claims, concluding that the Appellants had failed to meet their burden to demonstrate that their injuries were caused by a specific defect in the ratchet system. The district court later amended the judgment, granting summary judgment for the same reasons on the Appellants' claims of negligence and implied warranty.

## II.
### A. Motions to Remand

Pritchett and Scott appeal the district court's denial of their motions to remand their cases to state court for lack of unanimous consent. They assert that, because the attorney who signed GM's consent was not licensed to practice law in the state of Missouri or admitted to practice in the United States District Court for the Western District of Missouri, GM's consent to removal was invalid. We review *de novo* the denial of a motion to remand and the district court's exercise of removal jurisdiction. Chaganti & Assocs., P.C. v. Nowotny, 470 F.3d 1215, 1220 (8th Cir. 2006), cert. denied, 127 S. Ct. 2977 (2007).

The general removal statute, see 28 U.S.C. § 1446(b), permits a notice of removal to be filed within 30 days after receipt of the pleading and has been interpreted to require that all defendants must consent to the removal. See, e.g., Chicago, R.I. & P. Ry. v. Martin, 178 U.S. 245, 248 (1900) ("[I]t [is] well settled that a removal could not be effected unless all the parties on the same side of the controversy united in the petition . . . ."); Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring) ("Removal requires the consent of all of the defendants."); Bradley v. Md. Cas. Co., 382 F.2d 415, 419 (8th Cir. 1967) (stating this general rule). While the failure of one defendant to consent renders the removal defective, each defendant need not necessarily sign the notice of removal. See Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262 n.11 (5th Cir. 1988) (cited with disagreement on a different point of law in Morano Enters. of Kan. v. Z-Teca Rests.,

L.P., 254 F.3d 753, 755-57, 756 n.6 (8th Cir. 2001)).  There must, however, "be some timely filed written indication from each served defendant," or from some person with authority to act on the defendant's behalf, indicating that the defendant "has actually consented" to the removal.  Id.

We conclude that the requirement of a timely filed written indication of consent was satisfied in this case.  GM's attorney signed GM's written consent in a timely fashion, it was attached to Cottrell's notice of removal as an exhibit, not a stand-alone pleading, and there is no contention that the attorney who signed the document did not have authority to act on the company's behalf.  The notice of removal with its attached exhibit was filed in federal court by Cottrell's attorney, who was licensed and admitted to practice both in the state of Missouri and the United States District Court for the Western District of Missouri.  The exhibit sufficiently represented GM's consent to removal, and as the district court correctly noted, the Appellants cite no legal authority for the proposition that the consent must be filed as a separate document or pleading.  Accordingly, the district court properly exercised removal jurisdiction and did not err in denying the motions to remand.

## B.  Summary Judgment

"We review the district court's determination of state law, its conclusions of law, and its grant of summary judgment de novo."  Gamradt v. Fed. Labs., Inc., 380 F.3d 416, 419 (8th Cir. 2004).  Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see, e.g., Anderson v. Liberty Lobby , Inc., 477 U.S. 242, 247 (1986);  Ruminer, 483 F.3d at 563.  "In considering a motion for summary judgment, we do not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue."  Thomas v.

Corwin, 483 F.3d 516, 526 (8th Cir. 2007). "[T]he substantive law will identify which facts are material." Anderson, 477 U.S. at 248.

State law governs the substance of these diversity-based products liability actions. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). The district court determined that Kansas law governs the ratchet-related claims of Pritchett and Fix, that Missouri law applies to Scott's ratchet-related claims, and that Nebraska law governs Fix's ladder claim. These choice-of-law rulings are not appealed. Instead, Appellants argue that the district court erroneously concluded that they had failed to present competent evidence that their injuries were caused by a specific design defect under the applicable state laws.

## 1.  The Ratchet Design Defect Claims

There is no dispute that the ratchet design-defect claims are governed by Kansas and Missouri law. The parties have not identified any substantial differences between the laws of these states regarding the need to demonstrate both a design defect and proximate cause. However, it is fair to say that "the determination of when a product is actionable because of the nature of its design" is one of "the most agitated controversial question[s]" that courts face in the field of products liability law. Richcreek v. Gen. Motors Corp., 908 S.W.2d 772, 776 (Mo. Ct. App. 1995) (internal marks omitted).

In both Kansas and Missouri, the plaintiff bears the burden to demonstrate that the product design was defective and that the defect caused the plaintiff's injury. See Wilcheck v. Doonan Truck & Equip. Inc., 552 P.2d 938, 942 (Kan. 1976); Richcreek, 908 S.W.2d at 776. Each state articulates the definition of a design defect in its own way. Kansas law provides a clear statement that the product must be both defective and unreasonably dangerous. Jenkins v. Amchem Prods. Inc., 886 P.2d 869, 886 (Kan. 1994), cert. denied, 516 U.S. 820 (1995). The court in Jenkins emphasized that

-10-

the plaintiff must establish "some specific defect." Id. at 889. Missouri law provides a somewhat broader articulation of the standard, requiring a showing "that the product, as designed, is unreasonably dangerous and therefore defective." Richcreek, 908 S.W.2d at 776 (internal marks omitted). In Missouri, the courts have stated that unreasonable danger and causation are "the heart and soul" of a design defect case, id. (internal marks omitted), and that the term "'unreasonably dangerous' . . . needs no judicial definition," Rodriguez v. Suzuki Motor Corp., 996 S.W.2d 47, 65 (Mo. 1999) (en banc).

Kansas has adopted the consumer expectations test, which states that a product design is unreasonably dangerous where the product is "'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" Jenkins, 886 P.2d at 886 (quoting the Restatement (Second) of Torts § 402A cmt. i (1965)). Under this test, "[e]vidence of a reasonable alternative design may be introduced but is not required" to prove a design defect. Delaney v. Deere & Co., 999 P.2d 930, 946 (Kan. 2000). Missouri has not adopted the consumer expectations test but treats the term "unreasonably dangerous" as the ultimate issue for the jury. Rodriguez, 996 S.W.2d at 65. In Missouri, "[n]othing prevents the litigants from arguing that the utility of a design outweighs its risks, or that consumer expectations were violated, or any other theory of unreasonable dangerousness supported by the evidence." Newman v. Ford Motor Co., 975 S.W.2d 147, 154 (Mo. 1998) (en banc).

Missouri's articulation of what constitutes a design defect may be somewhat more relaxed than that of Kansas, but these distinctions do not affect the outcome of the cases before us. Both states permit a design defect to be proven by sufficient circumstantial evidence, as long as the defect "may be inferred without resort to conjecture and speculation." Peters v. Gen. Motors Corp., 200 S.W.3d 1, 18 (Mo. Ct. App. 2006); see Jenkins, 886 P.2d at 889 (Kansas law); see also Hickerson v. Pride Mobility Prods. Corp., 470 F.3d 1252, 1258 (8th Cir. 2006) (discussing Missouri

law).  Also, mere proof of injury or that an accident occurred, standing alone, will not make out a submissible case in either state.  See Shaffer v. Amada Am., Inc., 335 F. Supp. 2d 992, 997-98 (E.D. Mo. 2003) (citing Winters v. Sears, Roebuck, & Co., 554 S.W.2d 565, 571 (Mo. Ct. App. 1977)); Wilcheck, 552 P.2d at 943.  With these principles in mind, we turn to the evidence before us.

Appellants argue that the district court misconstrued the nature of the defect they asserted by focusing on their inability to pinpoint the mechanical origin of the "sudden release" that they experienced.  Appellants articulate that the defect lies in the manual nature of the ratchet system, which they allege is unreasonably dangerous because it requires a great deal of physical force to operate, and at the same time is prone, for various reasons, to sudden releases of tension.  Appellants assert that absent the manual nature of the ratchet system, they would not have been in physical contact with the system when the sudden release of tension occurred and, as a result, would not have been injured.  Appellants rely on their own and expert testimony to establish a material question as to the nature of the defect.  Viewed in the light most favorable to the Appellants, the record supports this characterization of the defect– i.e., that the ratchet system design is unreasonably dangerous because the manual nature of the ratchet system places its operator in the way of any sudden release of tension to which the system is prone.

Ms. Weseman's statements support this characterization of the defect.  Looking at the totality of her statement in each case, she sufficiently indicated that the manual Cottrell ratchet system used to tie down and untie vehicles requires excessive force levels to operate and is therefore unreasonably dangerous and defective.[4]  Ms. Weseman stated that Cottrell has acknowledged in a patent that the high force levels

_____

[4]From Ms. Weseman's testimony, it is reasonable to infer that the quick-release mechanism does not alter the tie-down process, and therefore, the tie-down process using a quick-release mechanism suffers from the same defect as the old-style ratchet tie-down system.

were causing injury. She cited her own observations of the high force levels, as well as another study, which concluded that a ratchet system substantially similar to Cottrell's "was improperly designed, allowing sudden releases and chain overloads." (Cottrell's Add. at A-3-4, A-11, A-21.) Ms. Weseman stated that the industry recognizes this danger, that the quick-release mechanism provides a safer design for the untying process, that others in the industry use tire restraints to eliminate the dangerous manual contact in the tie-down and untying process, and that the technology for a safer hydraulic system has also existed for decades. Ms. Weseman opined specifically that a quick-release mechanism would have prevented Scott's injuries and that a system of hydraulics or tire restraints would have prevented Pritchett's and Fix's injuries in the tie-down process. While it is not necessary to present expert testimony that a safer feasible alternative design exists as an element of a design defect claim, such evidence will nevertheless aid in creating a question of fact concerning the existence of a design defect. See Jenkins, 886 P.2d at 889-90; McDowell v. Kawasaki Motors Corp. USA, 799 S.W.2d 854, 866 (Mo. Ct. App. 1990) ("Design defects of a simple nature have consistently been found to be submissible on the basis of an expert opinion that an alternative design was feasible."). The expert's testimony as a whole, though not artfully stated, supports Appellants' assertion of an unreasonably dangerous design defect in the manual nature of the ratchet system.

The district court discounted Ms. Weseman's testimony for failing to eliminate all possible causes of the injuries, such as user error or ordinary wear and tear. Causation is a necessary element, but under Missouri law, the plaintiff "[i]s not required to present indisputable evidence excluding all possibility of another cause of the accident." Peters, 200 S.W.3d at 21. Likewise in Kansas, the elements of a products liability action may be proven by circumstantial evidence, and in order to be sufficient to sustain a verdict of a jury, the evidence "need not rise to that degree of certainty which will exclude any and every other reasonable conclusion." Dieker v. Case Corp., 73 P.3d 133, 145 (Kan. 2003) (internal marks omitted). It is sufficient to

-13-

make out a submissible case in Kansas if the circumstantial evidence on an element either "tend[s] to negate other reasonable causes," or there is "an expert opinion that the product was defective." Id. at 147 (internal marks omitted). The record in this case includes both circumstantial evidence and an expert opinion.[5]

The record also includes the Appellants' own testimony. The district court concluded that Appellants' testimony failed to establish causation because they did not know the exact cause of their accidents. We respectfully conclude that the district court took too narrow a view of the evidence in this case. The record sufficiently demonstrates that Pritchett, Scott, and Fix each described using force to operate the ratchet and experiencing a sudden force or sudden release of pressure in the ratchet system while they were physically engaged with the system that caused them to sustain injuries. Pritchett stated that while tightening the ratchet on his rig, "a sudden force" threw back the chain and tie-down bar, causing him to fall from the trailer and injure his arm and shoulder. (Cottrell's App. at 82.) Fix stated that while pulling on the tie-down bar to tighten the chain, "she rolled, she just popped and just 'phew,' slung me out and put me down." (Id. at 244.) His description that "she just popped" is substantially similar to Ms. Weseman's characterization of the event as a sudden release. Scott similarly equated a sudden release with his description of something that "popped," stating, "[t]he chain rolled on the ratchet, popped my shoulder and wrist." (Scott's App. at 211.) When asked if there was a sudden release, Scott answered, "[y]es." (Id.) Thus, although Appellants did not pretend to know the exact mechanical origin of the sudden releases of pressure, each testified generally that he

---

[5]In the proceedings below, Cottrell challenged the competency of the expert testimony under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and the Federal Rules of Evidence, but the district court did not rule on the issue. Therefore, for purposes of this appeal, we assume the expert offered competent scientific evidence, and we decline to rule on the issue in the first instance. The trial court must act as gatekeeper to screen expert testimony for relevance and scientific reliability. See Tenbarge v. Ames Taping Tool Sys., Inc., 128 F.3d 656, 659 (8th Cir. 1997).

-14-

was exerting a great deal of manual force when jarred by a release of tension, resulting in his injury. Bearing in mind the summary judgment context of this case, we must draw all reasonable and justifiable inferences of fact in Appellants' favor. See Hickerson, 470 F.3d at 1256; John Q. Hammons Hotels, Inc. v. Acorn Window Sys., Inc., 394 F.3d 607, 610 (8th Cir. 2005).

We have previously addressed this type of ratchet system in the context of a motion for judgment as a matter of law, and we concluded in that case that the district court properly permitted a jury to determine whether the ratchet system was unreasonably dangerous. See Ford v. GACS, Inc., 265 F.3d 670 (8th Cir. 2001) (applying Missouri law to a case where the plaintiff was injured while untying a vehicle using a manually operated ratchet), cert. denied, 535 U.S. 954 (2002). The plaintiff in Ford pulled down on the tie bar to release the pressure on the pawl and injured his shoulder after he "felt a sudden snap or sudden release." Id. at 675. As in the appeals currently before us, the plaintiff Ford offered evidence that the manufacturer was aware of the alternative design of a quick-release mechanism; that injuries from the force required to operate the manual system were a concern in the industry; and that the quick-release mechanism would eliminate the high force levels in the untying process. Id. at 677. Ford's expert opined that the force levels were unreasonably dangerous, and the manufacturer's expert testified that they were not. Id. On these facts, we held in Ford that the district court properly permitted the jury to resolve the dispute on the design defect claim. Id. We see no principled distinction in the appeals presently before us that would counsel for a different result. See Torbit v. Ryder Sys., Inc., 416 F.3d 898, 902-06 (8th Cir. 2005) (affirming a jury verdict on a design defect claim that a ratchet system used on a car-hauling rig was defective because it required the driver to exert dangerously high force levels; but noting in a footnote that neither the expert's qualifications nor the scientific validity of her methodology had been questioned).

After considering Appellants' testimony in each case together with the expert's statements and opinions, we conclude that there is evidence in the record sufficient to survive summary judgment on this claim. Appellants have presented evidence to create a material question of fact regarding whether their injuries were caused by an unreasonably dangerous design defect in the manual nature of the ratchet system. See Jenkins, 866 P.2d at 886 (reciting Kansas law, requiring evidence that the product is dangerous to an extent beyond what an ordinary consumer would contemplate); Daniel, 103 S.W.3d at 310 (noting that in Missouri,"[i]t is sufficient if the facts and circumstances in evidence fairly warrant the conclusion that the defect claimed by plaintiff was the cause of the injury he sustained").

## 2. The Ladder Design Defect Claim

Fix also brought a strict liability design defect claim alleging that the ladder on his rig broke while he was climbing it, causing him to fall and sustain injuries. See Kudlacek v. Fiat S.p.A., 509 N.W.2d 603, 610 (Neb. 1994) (stating the elements of a strict liability claim in Nebraska, requiring the plaintiff to prove that the product was in a defective condition that "rendered the product unreasonably dangerous and unsafe for its intended use" and that the defect was "the proximate or a proximately contributing cause of plaintiff's injury"). Fix testified that the ladder was not braced or welded to his rig (Cottrell's App. at 248), and he offered Ms. Weseman's opinion that Cottrell was negligent in failing to design the ladder in compliance with criteria as set forth in "the applicable safety codes and standards." (Cottrell's Add. at A-24.) The district court concluded that Fix failed to present sufficient evidence to create a material fact question over whether there was a defect in the ladder that caused his accident, and we agree. Fix's bare assertion that "they didn't brace it or weld it," (Cottrell's App. at 248) is insufficient to make out a submissible case on each element of the design defect claim. Further, Ms. Weseman's expert testimony presented a mere laundry list of general safety standards for ladder designs. She did not assert that this ladder was designed in violation of any particular safety standard, and she did not

state that she had inspected a Cottrell ladder or that Cottrell's ladders are generally unsafe or designed in violation of a particular safety standard. The expert offered no opinion that Cottrell's ladder was unreasonably dangerous or defective, or that any particular design caused or contributed to the accident in this case. The district court properly granted summary judgment on this claim.

## III.

Accordingly, we affirm the district court's denial of the motions to remand, as well as the district court's grant of summary judgment to Cottrell on Fix's ladder-related design defect claim. We reverse the district court's grants of summary judgment in all respects on Appellants' claims related to the ratchet, and we remand for further proceedings.

_____