# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3629

_____

Dana Wolfley and      *
Tammy Wolfley,      *
     *
     Appellants,      *
     *   Appeal from the United States
     v.      *   District Court for the
     *   Western District of Missouri.
Solectron USA, Inc.,      *
     *
     Appellee.      *

_____

Submitted: June 9, 2008
Filed: September 8, 2008

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

In this diversity case, Dana Lynn Wolfley sued Solectron USA, Inc. for negligence (and his spouse sued for loss of consortium). After an ice storm, Wolfley was injured by a slip and fall at Solectron's facility in Creedmoor, North Carolina. The district court[1] granted summary judgment to Solectron. Applying North Carolina law, the court concluded Solectron had no duty to warn Wolfley of the open and

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

obvious hazard of which he was at least equally aware. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

This court adopts the district court's statement of facts:

At the time of the fall, Wolfley, a Missouri domiciliary, was employed by Contract Freighters Inc. ("CFI"), a trucking company based in Joplin, Missouri. As a result of a contract between CFI and [Solectron], Wolfley was to make a delivery to [Solectron]'s North Carolina facility on or about January 27, 2004.

That day, a snow and ice storm blanketed Creedmoor and the surrounding area. The Creedmoor facility was closed for the day as a result of the severe weather and the danger presented by the icy conditions. The inclement weather and resulting road conditions also forced Wolfley to stop his truck for the night at the last truck stop outside Durham, North Carolina. Though it was no longer sleeting that evening, the temperature at the truck stop was below freezing and ice was visible.

By the next day, the storm had dissipated and the weather was clear. Wolfley arrived at the Creedmoor facility around 10:00 a.m. to make his delivery. As Wolfley approached the parking lot, the ice and slush on the street caused his truck to slide. When Wolfley pulled into the parking lot, he observed the conditions in the lot were even worse than those on the street. The lot was slushy and had more ice than the street, causing Wolfley's truck to slide again as he drove through the lot.

Wolfley stopped his truck in an area that was mostly ice with water–conditions that existed throughout most of the lot. Before, he arrived, no one warned Wolfley the facility grounds might be icy and he received no special instructions as to where to park or which door to use. After parking, Wolfley exited his truck wearing hiking boots, intending to enter the facility.

-2-

As he walked around his truck, Wolfley moved "very cautiously" and paid "close attention to his surroundings," keeping one hand near his truck because it was "awful icy" [sic]. Eventually, Wolfley made it to an area which appeared to him to be a "cleared path" and came to a puddle which was three to four feet wide and two to three inches deep. The puddle was in an area in which Wolfley understood water could drain away from the building. Indeed, Wolfley observed water running across the path on which he was walking. Shortly after stepping into the puddle which he believed to be just water, Wolfley slipped and fell. Wolfley, who observed ice on either side of where he fell, believes he slipped on a hidden layer of ice.

According to Tony McFalls ("McFalls"), the shipping and receiving supervisor and one of just two employees at the dock area on the day in question, no one made a physical inspection of the dock facility before Wolfley's fall. Although [Solectron] did not have a policy for removing ice and snow from the dock area and did not hire a third party to remove ice and snow, McFalls stated, "You could tell that there had been something done, but there was still ice there." There was still ice around the dock area where Wolfley parked and the "path" he followed. The melting and movement of the ice made it difficult to determine how dangerous it was in the dock area. After Wolfley's fall, McFalls blocked off the area and called a maintenance crew to salt the area.

## II.

This court reviews de novo the district court's determination of state law, its conclusions of law, and its grant of summary judgment. *Pritchett v. Cottrell, Inc.*, 512 F.3d 1057, 1062 (8th Cir. 2008). Summary judgment is appropriate, when viewing the evidence and drawing all inferences most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*, *citing* **Fed. R. Civ. P. 56(c)**.

"In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." ***Stricker v. Union Planters Bank***, 436 F.3d 875, 877 (8th Cir. 2006).

For tort claims, Missouri courts apply the "most significant relationship" test. ***Id.*** at 878. "Under this test, the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute." ***Dorman v. Emerson Elec. Co.***, 23 F.3d 1354, 1358 (8th Cir. 1994). For personal injury actions,

> the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

***Id.***; **Restatement (Second) of Conflict of Laws § 146**. "This formulation essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state based on the factors articulated in section 6." ***Id.*** The principles stated in § 6 are:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability, and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

***Id.*** at 1358 n.3; **Restatement (Second) of Conflict of Laws § 6(2)**. To determine if another state has a more significant relationship than the state of injury, the section 6 factors must be evaluated with the contacts listed in *Restatement (Second) of Conflict*

*of Laws § 145*: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *See **Dorman***, 23 F.3d at 1358, *citing **Kennedy v. Dixon***, 439 S.W.2d 173, 181 (Mo. 1969) (en banc). "In cases in which the injury and the conduct causing the injury occur in the same state, the Restatement principles are easy to apply." ***Dorman***, 23 F.3d at 1358.

Here, the injury and the conduct causing it occurred in the same state – North Carolina. Examining the section 6 factors, this court is "unable to conclude that Missouri's relationship to the case is so pivotal as to overcome the presumption that [North Carolina] . . . is the state with the most significant relationship." *See **id.*** at 1359. The district court did not err in applying North Carolina law. *See **Kennedy***, 439 S.W.2d at 185 ("The question of negligence . . . should be determined by the law of the state where the tort occurs because that is the state with the dominant interest concerning that issue . . . .").

III.

To establish a prima facie case of negligence under North Carolina law, Wolfley must show: (1) that Solectron failed to exercise proper care in the performance of a duty owed him; (2) the negligent breach of that duty was a proximate cause of his injuries; and (3) a person of ordinary prudence should have foreseen that his injuries were probable under the circumstances. *See **Von Viczay v. Thoms***, 538 S.E.2d 629, 630-31 (N.C. Ct. App. 2000), *aff'd per curiam*, 545 S.E.2d 210 (N.C. 2001).

All persons, except trespassers, are owed a duty of reasonable care on a landowner's property. ***Grayson v. High Point Dev. Ltd. P'ship***, 625 S.E.2d 591, 593 (N.C. Ct. App. 2006), *citing **Nelson v. Freeland***, 507 S.E.2d 882, 892 (N.C. 1998).

"A duty of reasonable care means that a landowner must not expose lawful visitors to danger unnecessarily and must provide such visitors with warnings of hidden hazards of which the landowner has actual or constructive knowledge." *Grayson*, 625 S.E.2d at 593. There is no duty, however, to protect or warn a visitor of "dangers either known or so obvious and apparent that they reasonably may be expected to be discovered. . . . [or] of any apparent hazards or circumstances of which the [visitor] has equal or superior knowledge." *Id.* (internal quotation marks omitted); *see also* *Wrenn v. Hillcrest Convalescent Home, Inc.*, 154 S.E.2d 483, 484 (N.C. 1967) (per curiam); *Nelson v. Novant Health Triad Region*, 583 S.E.2d 415, 418 (N.C. Ct. App. 2003). "Rather, a reasonable person should be observant to avoid injury from a known and obvious danger." *Von Viczay*, 538 S.E.2d at 631 (internal quotation marks and alteration omitted); *Roumillat v. Simplistic Enters., Inc.*, 414 S.E.2d 339, 344 (N.C. 1992). "Accordingly, dangerous conditions which are open and obvious do not create liability for a landowner." *Grayson*, 625 S.E.2d at 593.

In *Grayson*, the plaintiff slipped on ice and fell while walking to her car after work. *Id.* at 592. A snowstorm had just ended the day before. *Id.* The plaintiff testified she was aware of the snow and ice when she arrived at work. *Id.* When plaintiff left work, she remembered, "the condition of the parking lot was worse than when she went into work and she knew that the ice would be slippery and took short steps to keep from falling." *Id.* Plaintiff even told two co-workers that "somebody's going to get killed out here." *Id.* Dismissing plaintiff's negligence suit, the court stated: "Plaintiff's own testimony demonstrates that she knew of the hazardous condition and, therefore, there exists no issue of genuine fact that defendant owed her no duty." *Id.* at 593.

In *Von Viczay*, the plaintiff slipped on ice and fell after leaving a holiday party. *Von Viczay*, 538 S.E.2d at 630. Snow and ice had fallen the previous day; the temperature on the day of the party did not rise above freezing. *Id.* Although the walkways were shoveled and salted the day of the party and the driveway was plowed,

plaintiff stated she saw patches of snow and ice along the walkway. *Id.* When plaintiff left the party later that night, she exited the same door and proceeded down the same walkway as earlier. *Id.* However, after ten steps, she fell and fractured her wrist. *Id.* Dismissing plaintiff's negligence action on a motion for summary judgment, the court ruled:

> Defendant had no duty to either protect plaintiff from or warn plaintiff about this obvious danger where the "evidence presents no facts from which it can be inferred that defendant had more knowledge than plaintiff of the alleged dangerous or unsafe condition."

*Id.* at 632, *quoting* **Wrenn**, 154 S.E.2d at 484.

Similarly, in *Southerland v. Kapp*, 295 S.E.2d 602, 603 (N.C. Ct. App. 1982), the court affirmed summary judgment against the plaintiff when she slipped and fell on steps. The court reasoned: "Plaintiff Beulah Southerland's testimony shows that she knew the steps were covered with ice as she entered defendants' shop; that she knew rain and sleet had continued to fall while she was inside; and that she knew conditions were at least as bad if not worse when she emerged from the shop to leave." *Id.* The court concluded the defendants did not breach any duty owed to plaintiff because the ice was obvious. *Id.*

Here, the dangerous conditions were open and obvious. Similar to *Grayson*, *Von Viczay*, and *Southerland*, Wolfley's affidavit and deposition indicate he was aware of the snow and ice conditions. Wolfley stated the facility was closed the day before due to the ice storm, and he stopped at a truck stop overnight because of the weather. While waiting to enter Solectron's parking lot, Wolfley's truck slid on ice. The truck slid again inside the parking lot, which according to Wolfley, "was worse" than the street because it had "[m]ore ice." As Wolfley exited his truck, he walked "very cautiously" around it because it was "awful icy." While walking on the "cleared path," Wolfley noticed water running across the path and ice on either side of the path.

The puddle that Wolfley slipped in also had ice on either side of it; he could see that water would drain down to that low portion of the parking lot where he slipped. Because the snow and ice were open and obvious dangerous conditions, Solectron had no duty to warn or protect Wolfley. *See **Grayson***, 625 S.E.2d at 593 ("Accordingly, dangerous conditions which are open and obvious do not create liability for a landowner."); ***Wrenn***, 154 S.E.2d at 484 (no duty to warn of icy conditions when "plaintiff had full knowledge of the freezing and icy condition of the area").

Wolfley tries to argue that the dangerous condition was not open and obvious because he slipped and fell on hidden ice in a puddle, which was three to four feet wide and two to three inches deep. Wolfley, however, fails to present evidence that shows Solectron had more knowledge than he had of the dangerous condition. Therefore, summary judgment is appropriate. *See **Von Viczay***, 538 S.E.2d at 632 ("evidence presents no facts from which it can be inferred that defendant had more knowledge than plaintiff of the alleged dangerous or unsafe condition"); ***Grayson***, 625 S.E.2d at 593 (no duty to warn of "any apparent hazards or circumstances of which the [visitor] has equal or superior knowledge").

Moreover, Wolfley cannot recover because the dangerous condition should have been obvious to an ordinary person under the circumstances existing at the time Wolfley was injured. *See **Newsom v. Byrnes***, 443 S.E.2d 365, 367 (N.C. Ct. App. 1994) ("Further, [plaintiff] may not recover if she knew of the unsafe condition or if it should have been obvious to any ordinary person under the circumstances existing at the time she was injured."). In *Newsom*, the plaintiff slipped on some "gray clay" as she was walking down an incline. *Id.* at 366. The incline had been cut through with a bulldozer, and leaves had fallen on the ground. *Id.* It had been raining earlier that day, and a thin layer of mud covered the incline. *Id.* In ruling that the defendant did not have a duty to warn plaintiff of the obvious danger, the court stated:

Furthermore, even if the condition of the driveway had been rendered unsafe under the circumstances, plaintiffs knew of the unsafe condition, or it should have been obvious to any ordinary person under the circumstances at the time of the injury that the wet and muddy incline partially covered with leaves would be slippery and potentially dangerous.

*Id.* at 368. *See also **Byrd v. Arrowood**,* 455 S.E.2d 672, 674 (N.C. Ct. App. 1995) ("Even if the floor was wet due to the rain that evening, this condition would have been an obvious danger of which plaintiff should have been aware since she knew it was raining outside and it was likely that people would track water in on their shoes."). Because Wolfley was aware of the ice conditions (e.g., he specifically stated it was "awful icy" and the parking lot "was worse" because it had "[m]ore ice"), it should have been obvious that the puddle with ice on either side of it would be slippery and potentially dangerous. See *Newsom*, 443 S.E.2d at 368.

IV.

The judgment of the district court is affirmed.

BEAM, Circuit Judge, dissenting.

I agree with the court that North Carolina law applies in this case. Thus, I concur in that holding. But, North Carolina law requires that Wolfley's case be submitted to a jury. Accordingly, I dissent from the affirmance of the grant of summary judgment by the district court.

On the facts in the record, Solectron clearly had a duty to warn Wolfley that there was "hidden" ice under the puddle of water four-feet wide and two- to three-inches deep, located upon the "cleared path" leading visitors to Solectron's dock and building. Solectron employees stated that an attempt had been made to remove the ice

from the path. Having obviously started this exercise, Solectron was not at liberty to leave its business invitees to the mercy of the unremedied hidden danger. From the evidence adduced by Wolfley, Solectron employees knew or should have known that the ice and snow were melting causing flowing water to run off its building and across the apparently previously cleared pathway. This created the four-foot wide, two- to three-inches deep puddle on a passageway that appeared to be relatively free of ice except, as it turned out, for the indiscernible ice under the standing water. Solectron had superior notice of this situation existing on its property and under North Carolina law it had a duty to warn Wolfley of the potential danger. See Grayson v. High Point Dev. Ltd. P'ship, 625 S.E.2d 591, 593 (N.C. Ct. App. 2006). Summary judgment was inappropriate. Thus, I would reverse and remand the case for trial.

_____