### The COLONIAL PRESBYTERIAN CHURCH, Respondent,

v.

### HEARTLAND PRESBYTERY, Appellant.

No. WD 74374.

Missouri Court of Appeals, Western District.

June 26, 2012.

Application for Transfer to Supreme Court Denied July 31, 2012.

Application for Transfer Denied Sept. 25, 2012.

J. Brett Milbourn, Eric M. Shimamoto, and Ryan G. Terril, Kansas City, MO, for Respondent.

Allan V. Hallquist, Kansas City, MO, for Appellant.

Before Division Two: VICTOR C. HOWARD, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, J.

This is a church property case. The first issue is whether a national church's constitution, which purported to convey to the national church a local church's property in trust, is binding upon the local church, when the local church's own documents indicated allegiance to the national church but when the local church never indicated (in writing or otherwise) an intention to create a trust in favor of the national church. We hold that no trust was created with respect to the local church's property. The second issue is whether Missouri law governs the relationship between the local church and the national church with respect to property held in Kansas. Since both the local church and the national church's representative here are both Missouri entities, we hold that Missouri law governs their relationship. In relevant part, Kansas trust law does not differ from Missouri trust law, but Kansas may or may not apply a differ-ent rule governing local churches vis-à-vis their relationships to national churches. We need not decide the latter issue because no church or other religious organization incorporated in Kansas is a party to this lawsuit, and Missouri has the most significant relationship to the relationship between Colonial and the national church. Accordingly, we apply Missouri law and affirm.

**Facts and Procedural Background[1]**

Respondent The Colonial Presbyterian Church is a nonprofit Missouri corporation that owns property in both Missouri and Kansas. Colonial's predecessor was formed in the 1940s, and, until August 2010, Colonial was a congregation of the Presbyterian Church (U.S.A.) ("the national church") or the national church's predecessors. Colonial first purchased land in Kansas in 1996. Appellant Heartland Presbytery is a presbytery [2] of the national church for the geographic region in which Colonial is located.

Colonial is the sole titleholder of all of the property that is disputed in this lawsuit. All of the relevant acts of conveyance list Colonial, and only Colonial, as the grantee. Colonial never signed any deed purporting to grant (or convey in trust) the disputed property to the national church or Heartland.

Colonial's articles of incorporation, enacted in 1953, provide as follows:

> The purpose for which this corporation is formed is to incorporate a congregation of [the national church] for the conduct of all matters necessary and germa[ ]ne to the action of such church

---

1. On appeal from a grant of summary judgment, we review the record in the light most favorable to the non-moving party. *Lough v. Rolla Women's Clinic*, 866 S.W.2d 851, 852 (Mo. banc 1993).

2. A presbytery is "a ruling body in Presbyterian churches consisting of the ministers and representative elders from congregations within a district." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 930 (1983).

body under the laws and regulations of the national denomination.

Until the amendment that gives rise to this lawsuit, Colonial's bylaws provided as follows:

> Being a union Congregation of the [national church], we recognize that these Bylaws and all their provisions are subject to the Constitutions of [the national church]. All Members of this Congregation shall be under the discipline of the Session according to the rules agreed upon in harmony with the Constitution of each denomination where they coincide, and in harmony with the mandatory provisions of the Constitution of the denomination wherein the others are permissive, and at the choice of the Session where they may be contradictory, subject in any event to the laws of the State of Missouri.

In 1983, the national church added the following provision to its constitution:

> All property held by or for a particular church, a presbytery, a synod, the General Assembly, or the Presbyterian Church (U.S.A.) . . . is held in trust nevertheless for the use and benefit of the Presbyterian Church (U.S.A.).[3]

The national church's constitution was never signed by Colonial. Colonial is not indebted to Heartland or the national church in connection with any of the disputed property.

On August 5, 2010, Colonial's elders unanimously voted to recommend that Colonial withdraw from the national church. The elders scheduled a congressional vote to be held on August 22, 2010. On that date, Colonial's congregation voted to disassociate from the national church. The decision to disassociate carried with 97% of the vote. The 3% who voted to remain with the national church are not parties to this lawsuit.

Shortly before the vote occurred, Heartland had informed Colonial that all of Colonial's property was "held in trust for the use and benefit" of the national church. Colonial filed a petition for declaratory judgment, for quiet title, and for injunctive relief, seeking to establish that (1) it was the sole owner of the disputed property; and (2) Heartland had no right to the disputed property.

Heartland filed a counterclaim, asserting various causes of action but seeking, in essence, a declaration that it and the national church "are the beneficial owners of the real and personal property of Colonial."

The circuit court granted summary judgment in favor of Colonial and against Heartland on all claims, finding that Colonial owned all of the disputed property and that Heartland could not establish that Colonial held any of the disputed property in trust. Heartland appeals.

### Standard of Review

We review the circuit court's ruling on summary judgment motions de novo. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). That means we apply the same standard that governed below. *Id.* A motion for summary judgment should be granted when (1) there is no genuine dispute of material fact; and (2) the moving party has demonstrated its entitlement to judgment as a matter of law. *Id.*

Here, the parties do not dispute any of the material facts. Therefore, summary

---

**3.** The constitution of the national church also states that "[g]overning bodies of the church . . . have no civil jurisdiction or power to impose civil penalties. They have only ecclesiastical jurisdiction."

judgment was proper if and only if Colonial was entitled to judgment as a matter of law.

## Analysis

### I. Application of the neutral principles of Missouri law

■ In Points I and II of its appeal, Heartland argues that the trial court erred in entering summary judgment in that Colonial's articles of incorporation and bylaws, combined with the national church's constitution, created a trust in the national church's favor with respect to the disputed property. We disagree.

Under Missouri law, the national church's constitution was insufficient to convey the disputed property in express trust because the alleged settlor—Colonial—did not sign it.

> Other than for a conveyance by which a trust may arise or result by the implication or construction of law,[4] all declarations or creations of trust ... shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to declare such trusts ... else they shall be void.

§ 456.4–407.[5] Heartland concedes that Colonial never signed the national church's constitution, and therefore the constitution did not create an express trust over the disputed property.

■ Colonial's articles of incorporation and bylaws did not convey the disputed property in express trust because they did not include an intention to convey anything, nor did they describe the disputed property at all. A document purporting to create a trust must contain an ex-

pression of the settlor's intention to convey the property in trust. § 456.4–402(2); *Heartland Presbytery v. Gashland Presbyterian Church,* 364 S.W.3d 575, 582–83 (Mo.App.W.D.2012). Furthermore, a document purporting to create a trust must contain a definite description of the property to be conveyed. *Edgar v. Fitzpatrick,* 377 S.W.2d 314, 318 (Mo. banc 1964). Here, the articles of incorporation and the bylaws express no intention to convey anything, nor do they even mention the property that Heartland claims was conveyed to it in trust.

■ Heartland asserts vaguely that the documents created an implied trust, but, generally, there are only two types of implied trusts: constructive trusts and resulting trusts, *Parker v. Blakeley,* 338 Mo. 1189, 1201–02, 93 S.W.2d 981 (Mo.1936); *Gashland,* 364 S.W.3d at 583 n. 9; and Heartland does not assert a claim to either. Since Heartland is not asserting a constructive trust or a resulting trust (and has not identified any other legally recognized theory of implied trust), its claim to an implied trust must fail.

■ Heartland also claims that the "neutral principles" method of determining church property disputes mandates a finding that a trust was created. The "neutral principles" method requires us to rely "exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges." *Jones v. Wolf,* 443 U.S. 595, 603, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). In the preceding three paragraphs, we applied the "well-established concepts of trust and property law familiar to lawyers and judges" and held that none

---

4. As discussed further below, Heartland does not contend that a constructive trust or a resulting trust (either of which would satisfy this caveat of section 456.4–407) was created in this case.

5. Statutory references are to RSMo 2000, as updated through the 2011 cumulative supplement, unless otherwise indicated.

of the documents relied upon by Heartland suffices to create a trust.

■ The "neutral principles" method simply means that we apply Missouri law, with the caveat that we do not "rely on *religious* precepts" in interpreting the relevant documents and that we will not "resolve a *religious* controversy." *Id.* at 604, 99 S.Ct. 3020 (emphasis added). Here, we have not relied on any religious precept in interpreting the relevant documents: indeed, Heartland's complaint seems to be that, in interpreting the documents, the court below relied (as we do) exclusively on secular principles of trust law. Nor have we resolved (or even addressed) a religious dispute. Rather, we have simply resolved a property dispute, which, under these facts, is a matter that could scarcely be more secular.[6] *Gashland,* 364 S.W.3d at 586 ("Questions concerning property ownership generally do not implicate such ecclesiastical matters.' "). The underlying doctrinal or religious dispute—the reason that Colonial left the national church—is unknown to this court because the parties have (appropriately) not addressed it. Not knowing what the religious dispute is, we could hardly decide it.

More importantly, we applied the neutral principles method in *Gashland,* and Heartland concedes that we would have to overrule that case in order to rule in its favor while applying the "neutral principles" method. *Gashland,* 364 S.W.3d at

592 ("In order to establish an express trust on that property, fundamental principles of Missouri law required some effective expression of intent...."). Heartland was the party representing the national church in *Gashland,* and it relied upon the exact same clause in the national church's constitution. *Gashland,* 364 S.W.3d at 578. Further, the language in the *Gashland* church's bylaws is substantially similar to the language in Colonial's bylaws and articles of incorporation. *Gashland,* 364 S.W.3d at 584. We agree that ruling in Heartland's favor on Points I and II would require us to reverse *Gashland,* and we decline to do so. We explained the "neutral principles" method at length in that case, and it would serve no purpose to reiterate our reasoning here.

Heartland argues that we erred in *Gashland* in that the "neutral principles" method requires the court to ascertain the parties' intent, not to strictly apply Missouri trust law.[7] But that is a false choice: Missouri trust law *is designed* to effect the settlor's intent.[8] § 456.1–103(27) (defining "trust terms" as those that reflect the settlor's intent); *St. Louis Uniformed Firemen's Credit Union v. Haley,* 190 S.W.2d 636, 639 (Mo.App.1945) (holding that the settlor's intent governs whether a trust was created); *see also Morris v. Brown,* 941 S.W.2d 835, 843 (Mo.App. W.D.1997) (noting that ownership of a deed must be decided by ascertaining the

---

**6.** If the dispute here qualifies as a "religious dispute," then the "neutral principles" method could never be applied, for it would follow that *any* dispute involving a religious entity would qualify as a "religious dispute," thus prohibiting the court from ever deciding any issue involving a religious entity.

**7.** Heartland also claims that we erred in *Gashland* by "not considering" the national church's constitution. But that argument rests on a faulty premise: we *did* consider the national church's constitution, and we consid-

ered it to be insufficient to create a trust under neutral principles of law. *Gashland,* 364 S.W.3d at 592.

**8.** Heartland argues that we should give effect to "the parties' " intent, but surely Heartland is not arguing that the *beneficiary's* intent governs. To the extent Heartland is arguing that, we reject the argument, because it is beyond doubt that it is the settlor's intent that governs whether a trust was created. § 456.4–402(2); *Gashland,* 364 S.W.3d at 592.

grantor's intent). Our laws are based on the reasonable assumption that a party would not intend to convey its property (in this case, worth millions of dollars) in trust without signing the writing purporting to create the trust, identifying the property to be conveyed, and expressing a definite intention to create a trust. To be sure, a trust can be created in the absence of these formalities, but Heartland does not argue that the circumstances that would give rise to a constructive trust or a resulting trust are present here. Heartland contends only that the documents themselves (the articles of incorporation, the bylaws, and the constitution) create a trust. Applying the neutral principles of Missouri law, which are designed to effect the settlor's intent, those documents do not form a trust, and therefore Heartland's argument is meritless.[9]

Points I and II are denied.

**9.** Heartland seems to be arguing that the "neutral principles" analysis requires the court to ascertain the alleged settlor's intent by using *something other* than the well-established rules of Missouri trust law. But—setting aside for a moment the Supreme Court's guidance that "[t]he [neutral principles] method relies *exclusively* on objective, well-established concepts of trust and property law familiar to lawyers and judges," *Jones*, 443 U.S. at 603, 99 S.Ct. 3020 (emphasis added)— Heartland points us to no other method to ascertain the settlor's intent, apart from the method that would require us to defer to the national church's declaration of what the alleged settlor's intent was. Our Supreme Court has rejected the "rule of deference" approach to resolving church property disputes, *Presbytery of Elijah Parish Lovejoy v. Jaeggi*, 682 S.W.2d 465, 467 (Mo. banc 1984); and we therefore lack the power (and the inclination) to apply that approach.

**10.** We note that this case differs from the line of cases in which the "rule of deference" is typically discussed and/or applied. The rule of deference, when applied to church property disputes, typically involves a schism within a local church, with the national church asserting its right to determine which faction is

## II. Missouri has the most significant relationship with respect to the alleged conflict between Missouri and Kansas law.

▮ Heartland next argues that the trial court erred in (1) failing to apply Kansas law with respect to the disputed property that is located in Kansas; and (2) failing to conclude that Kansas law would recognize a trust in Heartland's favor with respect to the Kansas property. We disagree.

Heartland posits that the "rule of deference," which the Supreme Court of Missouri explicitly rejected in *Presbytery of Elijah Parish Lovejoy v. Jaeggi*, still applies in Kansas. 682 S.W.2d 465, 467 (Mo. banc 1984).

Under the "rule of deference," the use of which *Jones* still permits but no longer requires, the initial inquiry, in an intra-church [10] dispute over church property, the "true" church, and thus the true owner of the church property. *See Jones*, 443 U.S. at 609, 99 S.Ct. 3020 (noting that the national church was called upon to determine which among two factions was the "true congregation"); *Watson v. Jones*, 13 Wall. 679, 80 U.S. 679, 717, 20 L.Ed. 666 (1871) (noting that the competing factions both claimed to be the "true Walnut Street Presbyterian," whose trustees held title to the disputed property). In such cases, the court is asked to defer to the national church's determination of which faction is the "true" church (as thus the true titleholder), as opposed to applying neutral principles of law to determine with whom title lies. *See generally Jones*, 443 U.S. at 605–19, 99 S.Ct. 3020.

Here, the minority (the 3% of Colonial's members who voted to continue affiliation with the national church) is not before the court asserting that it is the "true" Colonial and thus the true titleholder of the disputed property. Even the dissent in *Jones*, which argued vigorously for the continued application of the rule of deference, recognized that "neutral principles" would be appropriate to settle a dispute between a local church and a national church when the local church had

was "where within the religious association the rules of polity, accepted by its members before the schism, had placed ultimate authority over the use of church property." If the church government was congregational, in which authority over questions of church doctrine, practice, and administration rests entirely with the local congregation, the civil courts, in disputes concerning the polity of a congregational church, enforce "the authoritative resolution of the controversy within the local church itself." If the church government is hierarchical,[11] the lower church being "an integral and subordinate part of a larger church," and "under the authority of the general church," the civil courts must give effect to the duly made decisions of the highest body within the hierarchy that has considered the dispute because the decisions of the local congregation are subject to review by the tribunals of the church hierarchy.

*Elijah Parish,* 682 S.W.2d at 468–69 (quoting *Jones,* 443 U.S. at 618–19, 99 S.Ct. 3020 (Powell, J., dissenting)) (citations omitted).

The Supreme Court of Kansas has not addressed the impact of *Jones,* 443 U.S. at

---

not split into factions. *Id.* at 614, 99 S.Ct. 3020 ("[T]he neutral-principles rule suffices to settle only disputes between the central councils of a church organization and a unanimous local congregation.") (Powell, J., dissenting).

Thus, *it is questionable that a jurisdiction, even one still adhering to the "rule of deference," would apply that rule in a case such as this, where the dispute is purely a property dispute, and there is no split in the titleholding church.* For example, Kentucky courts continue to follow the "rule of deference" generally, but they apply neutral principles when the local church has not split into factions. *Compare Cumberland Presbytery of The Synod of Mid–West of Cumberland Presbyterian Church v. Branstetter,* 824 S.W.2d 417, 422 (Ky.1992); *with Bjorkman v. Protestant Episcopal Church, Ky.,* 759 S.W.2d 583, 585 (Ky. 1988).

In the absence of a split local church, where the national church is called upon to decide the question of which faction represents the "true" church, and in the absence of some other religious dispute that itself controls the question of who owns or controls the disputed property, *see, e.g., Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 706–13, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (applying (in essence) the rule of deference where control of the disputed property was held by whoever was the Bishop of the Diocese, and the national church had "defrocked" the defendant Bishop for, *inter alia,* "canonical misconduct"); we fail to see what policy the rule of deference advances in property dispute cases. An *undivided* local church is not materially different from an individual religious person, and no one would suggest that a national church could convey to itself in trust property that is titled exclusively and unequivocally in one of its individual followers, even if that person had pledged allegiance to the national church or its constitution (assuming, of course, that the person had not created an express trust in favor of the church).

Indeed, in such cases, it would arguably *violate* the First Amendment and the Fourteenth Amendment for a state to impose a rule of deference so iron-clad as to force a local church to either (1) continue its association with a national church whose religious beliefs the local church no longer shared; or (2) disassociate and, in so doing, put itself at the financial mercy of the national church which could (with complete deference from the state courts) appropriate to itself all of the local church's property, despite having no legal right to do so under neutral principles of law. *See Milivojevich,* 426 U.S. at 733, 96 S.Ct. 2372 ("[T]he government may not displace the free religious choices of its citizens by placing its weight behind a particular religious belief, tenet, or sect.") (Rehnquist, J., dissenting).

But since Missouri law governs the relationship between Colonial and Heartland, we need not decide whether Kansas would apply the "rule of deference" in this case.

11. Heartland argues, and Colonial does not dispute, that Colonial and the national church were governed by a hierarchical system.

603–06, 99 S.Ct. 3020, which, as explained by the Supreme Court of Missouri in *Elijah Parish*, 682 S.W.2d at 468, held that the First Amendment permits but does not require a state court to apply the neutral principles approach in deciding church property disputes. We need not decide, however, whether the Supreme Court of Kansas, in the wake of *Jones*, would adopt the neutral principles approach, because Missouri law governs the relationship between the two Missouri entities that are the parties to this case.

The conflict of laws here (if there is one) is not, as Heartland would have it, a conflict between Missouri trust law and Kansas trust law. In relevant part, the *trust law* of the two states does not differ. *See* KAN. STAT. ANN. § 58–2401 (mandating that an express trust over real property be conveyed in writing); *and Godley v. Valley View State Bank*, 277 Kan. 736, 89 P.3d 595, 600 (2004) (holding that an express trust must contain an explicit declaration of an intention to create a trust and definite description of the property to be conveyed in trust); *and compare* § 456.4–407 (Missouri's requirement that an express trust be signed by the settlor); *Gashland*, 364 S.W.3d at 582–83 (holding that Missouri law requires a definite expression of intent to create an express trust); *and Edgar*, 377 S.W.2d at 318 (holding that property conveyed in express trust must be specifically described). "[If] the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict of laws and the case ought to be decided under the law that is common to both states.'" *Hartford Acci. & Indem. Co. v. Travelers Ins. Co.*, 525 S.W.2d 612, 616 (Mo.App.1975) (quoting Robert A. Leflar, American Conflicts Law, § 103 False Conflicts, p. 239 (1959 rev. ed.1968)).

The conflict of laws here (if there is one) is the difference between the neutral principles approach and the rule of deference approach. These principles speak not to trust law, but to how a jurisdiction treats the relationship between its local churches and the larger religious organizations with which those churches are affiliated. Thus, it is *the situs of the relationship* that is the crucial issue. *See Goede v. Aerojet Gen. Corp.*, 143 S.W.3d 14, 26 (Mo.App. E.D. 2004) (holding that, in evaluating a conflict of law issue, the "contacts are to be evaluated according to their relative importance with respect to the particular issue at hand") (abrogated on other ground by *Sanders v. Ahmed*, 364 S.W.3d 195, 207 (Mo. banc 2012)). Assuming, for the sake of argument, that Kansas applies the rule of deference, it does so with the intention of governing how Kansas churches relate to the larger religious organizations with which they are associated.

Since no Kansas church [12] or other religious organization is before this court, we have, in essence, a false conflict of laws. A false conflict of laws exists when the policy of the foreign jurisdiction would not be advanced by application of its law because there is no resident of the foreign jurisdiction before the court who would benefit from the foreign jurisdiction's law. *Griggs v. Riley*, 489 S.W.2d 469, 471–72 (Mo.App.1972); *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C.1995). Colonial is a Missouri church, and Heartland is a Missouri Presbytery. The Supreme Court of Missouri has adopted the neutral principles approach in deciding how disputes between local churches and national churches should be resolved, and, since we have two Missouri religious organizations before the court, that is the approach that governs.

---

**12.** By "Kansas church," we mean one incorporated in Kansas.

To the extent this case presents a true conflict of laws issue, the most significant relationship test, which Missouri courts use to resolve true conflicts, *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 58 (Mo. banc 2005) (holding that the most significant relationship test applies when there is a conflict between substantive laws); would favor finding that the relationship between Colonial and Heartland be decided under Missouri law.

■■■■■ Although the relationship between Colonial and the national church is not governed by a contract, the parties *agreed* to be associated with one another, and therefore the choice of law principles associated with contracts are analogous.

The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction.... In the absence of an effective choice of law by the parties [13] ... the contacts to be taken into account ... include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Byers v. Auto–Owners Ins. Co.*, 119 S.W.3d 659, 664 (Mo.App. S.D.2003).

These factors need not be analyzed in isolation because everything that is relevant to Colonial and the national church's relationship, with the exception of Colonial purchasing Kansas property in 1996, occurred in Missouri. From the 1940s to the present, Colonial has been a Missouri corporation, dealing with the national church in Missouri. Colonial alleges, and, in its reply brief, Heartland did not dispute, that "all of the events by which the purported trust came into existence were alleged to have occurred in Missouri." It is true that some of the disputed property lies in Kansas, but Heartland has neither alleged nor demonstrated that the purchase of property in Kansas transferred the situs of the parties' relationship—which unquestionably began in Missouri—to Kansas. Colonial is and has always been a Missouri church owning property in Missouri. From the record before us, it dealt with Heartland and the national church exclusively in Missouri. Accordingly, the contacts between the parties strongly favor the application of Missouri law.

■■■ In addition, the most significant relationship test requires any issue to be evaluated using the following factors:

(a) the needs of the interstate and international systems,[14]

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

---

13. Neither party alleges that they explicitly agreed to be governed by a certain state's laws.

14. The needs of the interstate system would not appear to be relevant, and we therefore do not analyze them below.

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Goede,* 143 S.W.3d at 26.

As explained above, the relevant policies of the forum and the relevant policies of the foreign jurisdiction favor applying Missouri law because two Missouri entities (which Missouri would seek to benefit with the application of its policies) and no Kansas entities (which Kansas would seek to benefit with the application of its policies) are before the court. The protection of justified expectations favors Missouri law because the parties entered into their relationship in Missouri. The basic policies underlying the particular field of law favor the neutral principles approach for the reasons stated in *Jones, Elijah Parish, Gashland,* and here. Furthermore, the certainty and predictability of result favors Missouri law because the parties concede that *Gashland* essentially controls, whereas there is no Kansas case on point, and we would have to speculate regarding how the Supreme Court of Kansas would treat *Jones.* For the same reason, the ease of determining and applying the law favors Missouri law.

Therefore, we hold that Missouri law applies to the question of whether the neutral principles approach applies to the relationship between Colonial and Heartland, the national church's representative here. Point denied.

## Conclusion

Under the neutral principles approach, the disputed property was never conveyed in trust, and therefore title remains in Colonial. The situs of the parties' relationship is Missouri, and therefore Missouri law applies to how that relationship is governed. Accordingly, the trial court's judgment is affirmed.

VICTOR C. HOWARD, Presiding Judge, and MARK D. PFEIFFER, Judge, concur.