# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 22-1563

———————————————

Nicolas Valadez Rey, Individually, and as Next Friends;
Jessica Leanne Quinn, Individually, and as Next Friends

*Plaintiffs - Appellants*

v.

General Motors, LLC

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Western District of Missouri

——————————

Submitted: November 16, 2022
Filed: August 11, 2023

——————————

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.

——————————

GRASZ, Circuit Judge.

Nicolas Valadez Rey sustained a spinal injury during a rollover car accident in Mexico. Rey, along with his wife, Jessica Quinn, (collectively, "Plaintiffs") filed a claim for damages against General Motors, LLC ("GM") on theories of strict

liability, negligence, and loss of consortium. The district court[1] applied the law of Coahuila, Mexico, under Missouri's choice of law principles, and granted GM's motion for summary judgment. Plaintiffs appeal the district court's choice of law decision. We affirm.

## I. Background

Rey, Quinn, and their three children traveled from Kansas City, Missouri, to Torreón in Coahuila, Mexico, to stay with family in July 2019. They drove their 2006 GMC Yukon. The purpose of the trip was related, at least in part, to Rey's legal status in the United States. Rey is a Mexican citizen, and at the time of the accident, he could not legally re-enter the United States due to an expired visa. The plan was for Quinn and the children to return to the United States after about a month in Mexico, and for Rey to return once the process for updating his visa was complete.

After at least a month in Torreón, the family drove the Yukon back to the United States border on or about August 30, 2019. Rey's intention was to take a bus from the border back to Torreón and for his family to continue home to Missouri in the family's vehicle. But once they reached the border, Quinn had a change of heart. Rather than returning to the United States, she decided to stay in Mexico with her husband. The family turned around in the Yukon to drive back to Torreón. Before they reached their destination, though, their Yukon was involved in a single-vehicle rollover crash on the morning of August 31. Rey's cervical spine was injured and he is not expected to walk again.

Rey and Quinn sued GM in the Western District of Missouri, asserting various claims related to the design and performance of the vehicle's roof and other features in the event of a rollover accident. GM is a Delaware limited liability company, and its principal place of business is in Michigan. The district court determined the Yukon was assembled in Wisconsin, originally distributed by General Motors

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

Corporation to a dealership in Texas, resold by several third parties, and eventually sold to Rey at a dealership in Kansas City, Missouri. Rey and Quinn live in Kansas City, Missouri.

Within approximately a week after the action was filed it was clear in the record that the accident occurred in Mexico. The district court issued a Rule 16 scheduling order which, after subsequent motions for extensions, had a discovery deadline of October 1, 2020, a choice of law motion deadline of October 8, and a trial date of July 20, 2021. The district court's scheduling order cautioned the parties against filing choice of law motions too early. It stated, "[w]hile such motions may be filed any time before [the deadline to file dispositive motions] . . . [the Court] may defer ruling on a choice of law motion if the parties have not presented a factual record full enough to permit the Court to properly undertake the appropriate analysis."

On October 8, Plaintiffs and GM each filed a choice of law motion. Plaintiffs argued the law of Missouri should apply, and GM argued the law of Coahuila, Mexico, should apply. The district court agreed with GM, entering an order that Mexico's law would govern the claims. Shortly thereafter, with leave of the district court, Plaintiffs filed an amended complaint to replead their claims under the law of Coahuila, Mexico. The updated causes of action were for Count I, "Negligence & Damages under the Coahuila Civil Code," and Count II, Quinn's "Moral Damages under Coahuila Law."

GM filed a motion to dismiss Count II, arguing Coahuila does not recognize "indirect" moral injuries, which the district court granted. GM then filed a motion for summary judgment on Count I, the remaining "negligence" claim, which, again, the district court granted. Plaintiffs appeal.

-3-

## II. Analysis

The only issue on appeal is whether the district court erred when it concluded the law of Coahuila, Mexico, governed the action. Plaintiffs advance two main arguments in support of reversing the district court's decision: (1) GM waived the application of foreign law by failing to raise it in a timely manner; and (2) under Missouri's choice of law principles, Missouri had a more significant relationship with the parties and the occurrence than Mexico.

## A. Waiver

We turn first to the issue of waiver. As we have previously observed, whether foreign law has been timely raised under Federal Rule of Civil Procedure 44.1 is a determination that "implicates the discretionary powers of the district court to supervise litigation." *Azarax, Inc. v. Syverson*, 990 F.3d 648, 652–53 (8th Cir. 2021). It is within the realm of decisions with which "[t]he district court is entitled to considerable deference," and we will not disturb the ruling below unless there was an abuse of discretion. *Id.* at 654.

The text of Rule 44.1 says nothing about when notice of intent to raise an issue about a foreign country's laws must be given. It says: "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1. The purpose of this notice requirement, however, is to avoid unfair surprise. *Azarax*, 990 F.3d at 652. Thus, a timeliness aspect is implicated by the rule. Whether the notice a party provided is timely in a particular case turns on the facts and circumstances of that case. *See id.* at 653 (indicating the timing of the notice ought to be "reasonable in light of the interests of all parties and the court" (quoting *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 847 (9th Cir. 2001)). There are multiple factors that could be at play including, but not limited to: "[t]he stage which the case had reached at the time of the notice, the reason proffered by the party for his failure to give earlier notice, and the importance to the case as a whole of the issue of foreign law sought to be raised."

*Id.* at 653 (brackets in original) (quoting Fed. R. Civ. P. 44.1 advisory committee's note to 1966 adoption).

Plaintiffs argue the timing of this notice was unreasonable because: (1) it was practical for GM to provide an earlier notice since it was clear from the beginning of litigation the accident happened in Mexico; (2) GM's choice of law motion was filed after discovery closed; and (3) Plaintiffs had conducted their discovery under the assumption that Missouri law would apply. In Plaintiffs' view, the district court's decision to apply Mexican law "pulled the rug out from under" them—i.e., they were unfairly surprised by the application of Mexico's law.

GM paints a different picture. As it sees things, there was no unfair surprise here because GM complied with the district court's Rule 16 scheduling order for filing choice of law motions, and it filed the motion nine months before the then-scheduled trial. At oral argument, GM pointed out additional facts as well: Plaintiffs' choice of law motion (filed the same day as GM's) acknowledged the Missouri-law presumption that the law of the place of the injury generally governs and sought to rebut that principle, and Plaintiffs initially opposed continuing the trial date. To GM, these facts show Plaintiffs were not truly surprised by GM's desire to rely on Mexican law and, even if they were surprised, it worked no unfairness against them.

As a practical matter, GM's notice could have been provided earlier in the proceedings. This fact is one that may weigh against the timeliness of GM's notice. *See* Fed. R. Civ. P. 44.1 advisory committee's note to 1966 adoption ("In some situations the pertinence of foreign law is apparent from the outset; accordingly the necessary investigation of that law will have been accomplished by the party at the pleading stage . . . ."). But that is not the only fact at play in this case, and it alone is not dispositive.

At the time GM filed the motion in October 2020, the trial date was scheduled for July 2021—still nine months away. Although discovery had closed, Plaintiffs

did not seek to reopen discovery. Nor, on appeal, have they identified factual gaps for their claims under Mexican law that did not exist under Missouri law that they would have tried to fill in with a different discovery strategy. We also find it notable that Plaintiffs' own choice of law motion, filed on the same date, acknowledged application of Mexican law was on the table under Missouri's choice of law principles because it was the place of the injury. This seems particularly relevant because GM's reason for raising the issue when it did was because the district court had cautioned the parties not to raise choice of law issues too early, and GM understood its actions to simply conform to the district court's scheduling order. Under all the facts and circumstances of this case we conclude the district court did not abuse its discretion when it determined GM had not waived its ability to assert the application of Mexican law.

To avoid this conclusion, Plaintiffs rely on our recent decision in *Azarax*. In *Azarax*, we held a district court did not abuse its discretion by denying a party's motion to rely on Mexico's law. 900 F.3d at 654. The district court had relied on the fact that the case had been pending for more than three years, the party had not provided a reason for the late notice, and the delay was unreasonable. *Id.* at 653. The appellant argued the delay "was justified because it did not learn that" foreign law was relevant until that time in the proceedings. *Id.* We disagreed, concluding the record put the party on notice that Mexican law was at issue. *Id.* We also agreed with the district court's conclusion that the notice was not timely because discovery had closed and "[t]he court would have been required either to decide an issue of foreign law without the benefit of thorough briefing or to extend litigation that was already three years old to permit additional briefing and discovery." *Id.* at 654.

Plaintiffs emphasize our statement that "[i]t is only fair to provide notice of potential application of foreign law as early as is practicable" under Rule 44.1. *Id.* at 653 (brackets in original) (quoting *DP Aviation*, 268 F.3d at 847). Their analysis ignores, however, the end of the sentence which adds: "and, in any event, at a time that is reasonable in light of the interests of all parties and the court." *Id.* (quoting same). We do not read *Azarax* as creating an early-as-is-practicable hardline rule.

Just because GM could have provided notice earlier does not mean such notice was so unreasonable that GM waived its right to request application of foreign law.

Plaintiffs also emphasize that part of our reasoning in *Azarax* related to the fact discovery had closed, and discovery had also closed in this case when GM filed their choice of law motion. There are differences between these cases, though. Unlike the party in *Azarax*, GM had a legitimate explanation for its delay. And the length of that delay—approximately thirteen months from the beginning of the proceedings—is much shorter than the three-year delay in *Azarax*. Moreover, the district court extended the litigation. At the time the district court entered its order on the choice of law motion on October 13, 2021, trial was scheduled for November 8. On October 27, the district court sua sponte continued the trial and later set the new trial date for March 16, 2022. Our conclusion in *Azarax* that the district court did not abuse its discretion by refusing to allow a party to rely on foreign law, does not lead to the conclusion the district court abused its discretion here when it decided the opposite under different facts.

## B. Choice of Law

Next, Plaintiffs take aim at the district court's choice of law determination. When reviewing a district court's decision on choice of law, this court considers the matter de novo. *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F.4th 1144, 1148 (8th Cir. 2023). Because our jurisdiction is based on diversity, we apply the forum's choice of law rules, *id.*, which in this case is Missouri.

When "interpreting and applying Missouri state law, 'we are bound by the decisions of the Supreme Court of Missouri.'" *Burdess v. Cottrell, Inc.*, 53 F.4th 442, 447 (8th Cir. 2022) (quoting *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 897 (8th Cir. 2014)). "Where the Supreme Court of Missouri has not spoken, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Id.* (cleaned up) (quoting same).

Before addressing the merits of the decision, Plaintiffs argue the district court erred by reaching the question of whether to apply Missouri or Mexican law because the case involved a "false conflict" of laws under Missouri law. For this argument, Plaintiffs rely on *Colonial Presbyterian Church v. Heartland Presbytery*, 375 S.W.3d 190 (Mo. Ct. App. 2012), and the district court's statement that Rey was a Missouri resident. *Colonial Presbyterian* says: "A false conflict of laws exists when the policy of the foreign jurisdiction would not be advanced by application of its law because there is no resident of the foreign jurisdiction before the court who would benefit from the foreign jurisdiction's law." *Id.* at 199.

GM responds that, whatever the merits of Plaintiffs' position, they waived this argument because they did not raise it before the district court. We agree. Review of the arguments presented below shows the no-conflict argument Plaintiffs raised below was based on whether the law of the different jurisdictions would yield different results, rather than the rule identified in *Colonial Presbyterian*. Because we do not address arguments raised for the first time on appeal, this argument is waived. *See St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp.*, 539 F.3d 809, 824 (8th Cir. 2008) (concluding choice of law argument not presented to the district court was waived).[2]

That brings us to the merits of the district court's choice of law decision. Missouri has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws to determine the applicable law for tort claims. *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008); *see also Parrott v. Severs*

---

[2]The Missouri Supreme Court has not expressly endorsed the rule of *Colonial Presbyterian*. Thus, even if we were to "reach that question today, [and] make the appropriate '*Erie*-educated guess,'" *Olmsted Med. Ctr. v. Continental Cas. Co.*, 65 F.4th 1005, 1010 (8th Cir. 2023) (quoting *Blankenship v. USA Truck Inc.*, 601 F.3d 852, 856 (8th Cir. 2010)), we are skeptical the Missouri Supreme Court would adopt the rule, and even more skeptical the Missouri Supreme Court would extend the rule to the context of a foreign citizen who could not legally enter the United States at the time of the injury.

*Trucking, LLC*, 422 S.W.3d 478, 482 (Mo. Ct. App. 2014). Section 145 provides the general guiding principle for choice of law in all tort actions: "the rights and liabilities of the parties will be determined by the law of the state with the most significant relationship to the accident and the parties." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994). Section 146 provides the rule specific for personal injury actions:

> the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied

Restatement (Second) of Conflict of Laws § 146 (1971). "This formulation essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state based on the factors articulated in section 6." *Wolfley*, 541 F.3d at 823 (quoting *Dorman*, 23 F.3d at 1358).

Applying the Restatement's principles is easier in some cases than others. We have observed that when "the injury and the conduct causing the injury occur in the same state, the Restatement principles are easy to apply." *Dorman*, 23 F.3d at 1358. In that scenario, the state where the injury and the conduct causing the injury occurred will most likely govern. *See Nelson v. Hall*, 684 S.W.2d 350, 352–53 & n.3 (Mo. Ct. App. 1984) (recognizing a state's "obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there" means "the local law of the state where conduct and injury occurred will be applied," "subject only to rare exceptions" (emphasis omitted) (quoting Restatement (Second) of Conflict of Laws § 145 cmt. d (1971)).

The complexity of the analysis increases when "the injury and the conduct causing the injury take place in separate states." *Dorman*, 23 F.3d at 1358–59. That is the position we find ourselves in today. In this case, Rey's injury occurred in

Mexico. GM assembled the vehicle in Wisconsin and it is unclear where it was designed. Thus, we return to the guiding principles of the Restatement to ask whether "some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties" than Mexico. Restatement § 146.

The only state Plaintiffs ask us to consider under the § 6 factors is Missouri. Although there are seven factors listed in § 6, Plaintiffs focus on subsections (b), (c), and (e). *See Dorman*, 23 F.3d at 1359 (identifying (b), (c), and (e) as the most relevant factors in personal injury claims caused by accidents); *Wilson v. Image Flooring, LLC*, 400 S.W.3d 386, 397 (Mo. Ct. App. 2013) ("Generally, the only factors that are relevant in a tort action are those identified in subsections (b) and (c) . . . ."). These factors are "the relevant policies of the forum," "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," and "the basic policies underlying the particular field of law." Restatement (Second) of Conflict of Laws § 6(2)(b)–(c) and (e) (1971).

Plaintiffs emphasize Missouri's interest in seeing them, as long-time residents of Missouri, compensated for their injuries. Missouri's law does not lead decisively to the conclusion that, because Plaintiffs claims may be more likely to succeed under Missouri's law, Missouri's law should be applied. In *Wilson*, the Missouri Court of Appeals distinguished between "a right of recovery as opposed to a question of liability." 400 S.W.3d at 398. If the issue was over "a rule of recovery or a question of compensation, the domicile of the parties is the most significant contact." *Id.* For that reason, the *Wilson* court declined to apply Kansas's law placing a cap on non-economic damages when the plaintiffs were Missouri domiciliaries and the defendant was a Missouri corporation, even though Kansas was the place of the injury, the place where the conduct occurred that gave rise to the injury, and the center of the location of the relationship between the parties. *Id.*; *see also Rider v. Young Men's Christian Ass'n of Greater Kan. City*, 460 S.W.3d 378, 388 (Mo. Ct. App. 2015). Here, the issue with Plaintiffs' claims is whether GM committed any tort at all—i.e., a question of liability—rather than with how much Plaintiffs are entitled to recover. This is evident based on how the district court resolved this case

-10-

against Plaintiffs on GM's motion to dismiss and motion for summary judgment. And Plaintiffs appear to concede that the switch to the law of Coahuila, Mexico, substantively doomed their claims. Therefore, Missouri's interest in Plaintiffs' "right of recovery" does not outweigh Mexico's interest in determining "the right of remedy." *Rider*, 460 S.W.3d at 388.

Plaintiffs try to reduce Mexico's relative interest by arguing Mexico's contact with the parties and the occurrence was irrelevant under the "enhanced injury" doctrine and was otherwise merely fortuitous. The enhanced injury doctrine "distinguishes between the conduct or circumstances which cause an accident and an alleged design defect which causes an injury to the plaintiff." *Thornton v. Gray Auto. Parts Co.*, 62 S.W.3d 575, 587 (Mo. Ct. App. 2001). "Under the correct circumstances," the doctrine means "the manufacturer cannot even raise the misconduct of the plaintiff as a basis for comparative fault." *Id.* Although Plaintiffs insist the application of this doctrine is important in choice of law, they do not cite any cases applying the doctrine to the inquiry. Without something more, we have no reason to believe the Missouri Supreme Court would extend this doctrine to the context of choice of law. *See Burdess*, 53 F.4th at 447 (providing our role is to predict how the Missouri Supreme Court would rule if it is silent on an issue).

The Restatement recognizes the role of the place of the injury will be less important "when the place of injury can be said to be fortuitous . . . ." Restatement § 145 cmt. e. "The quintessential example of a contact being fortuitous is the 'flyover' case where the plaintiff is injured while passing over a state during air flight, so that the place of the injury is inconsequential." *Dorman*, 23 F.3d at 1360 (citing *Nelson*, 684 S.W.2d at 352 n.3). This case bears little resemblance to the quintessential example. At the time of the accident, Plaintiffs had been in Mexico for at least a month, had recently decided to remain there even longer, and it was uncertain when they would return to the United States. Like the district court observed, these are not "fortuitous" contacts with Mexico, but intentional contacts.

Lastly, Plaintiffs argue the basic policies underlying the field of strict liability law would be undermined by applying Mexico's law because Mexico does not allow a claim for strict liability. A comment to § 6 provides that, subsection (e) "is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules." Restatement § 6 cmt. h. Such is not the case here, where, according to Plaintiffs, the substantive laws are different to the extent that Mexico does not even recognize claims for strict liability. For that reason, this factor does not tilt things in Plaintiffs' favor.

After considering the § 6 factors and the parties' arguments, we conclude Missouri's relationship to this case does not overcome the presumption that the place of the injury—Coahuila, Mexico—is the place with the most significant relationship to the parties and occurrence.

### III. Conclusion

The judgment of the district court is affirmed.

_____